### ARMOUR & CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. April 20, 1915.)

#### No. 1900.

FOOD ☞12—MEAT INSPECTION—VIOLATION OF STATUTORY REGULATIONS.

> Defendant, maintaining a plant in Chicago where animals were killed and their flesh prepared for market under the supervision of the Department of Agriculture, bearing the official designation of "Establishment 2 A," and also maintaining selling or distributing agencies, not under government supervision, one of which was in Pittsburgh, and who shipped to the Pittsburgh distributing agency from the Chicago plant hams which had been inspected and passed, and which were thereafter boiled and smoked and then wrapped in a paper bearing labels, approved by the Department, reading "Armour's 'Star' Boiled Ham," and "U. S. Inspected and Passed * * * Establishment 2 A," was guilty of a violation of the provision of Meat Inspection Act June 30, 1906, c. 3913, 34 Stat. 669, 677, that no person, firm, or corporation shall without proper authority use any of the marks, labels, or other identification devices provided for in that act, or in the rules and regulations prescribed thereunder, though there was no intent to violate the act, and though the hams when wrapped were sound, healthful, wholesome, and otherwise fit for human food, as the labels indicated that the "boiled" ham had been inspected and passed at Establishment 2 A, and were therefore untrue.

> [Ed. Note.—For other cases, see Food, Dec. Dig. ☞12.

> What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

In Error to the District Court of the United States for the Western District of Pennsylvania; William H. Hunt, Judge.

Armour & Co. was convicted of an offense, and brings error. Affirmed.

A. B. Stratton, of Chicago, Ill., for plaintiff in error.

E. Lowry Humes, of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

---

McPHERSON, Circuit Judge. In January, 1914, an indictment comprising two counts was preferred against Armour & Co. in the Western district of Pennsylvania. The first count charged an offense against the Meat Inspection Act of 1906, and the second count charged an offense against certain regulations ordained by the Secretary of Agriculture under the authority of the act. The facts were agreed upon and the trial judge instructed the jury to render a verdict of guilty upon both counts, afterwards imposing a fine of $200. No evidence was offered that the offenses charged had been deliberately or intentionally committed, but we agree that no such intent is essential. Although the acts complained of may have been mistaken or inadvertent, nevertheless an offense may have been committed.

The facts appeared by a written stipulation, from which the trial judge struck out certain paragraphs and sentences as irrelevant. We condense what remains:

Armour & Co. is a corporation engaged in killing cattle, hogs, and sheep, preparing the meat for market in many forms, and selling as a wholesale dealer. It maintains plants in the United States where the animals are killed and their flesh is prepared for market, its Chicago plant being under the supervision of the Department of Agriculture and bearing the official designation of Establishment 2 A; and it maintains also many selling or distributing agencies through the country where the meat products are sold, one such agency being at Twenty-First and Carson streets, in the city of Pittsburgh, Pa. This Pittsburgh house is not under government supervision, and has no official designation. On September 12, 1913, 20 cooked hams were wrapped by the defendant's agents at the branch house in Pittsburgh, each wrapper being a sheet of paraffin paper on which were printed two disconnected labels, one label reading, "Armour's 'Star' Boiled Ham, Armour and Company," and the other reading, "U. S. Inspected and Passed Under the Act of Congress of June 30, 1906, Establishment 2 A." Each wrapper was secured upon the ham by a cord or tape.

These hams had been shipped to the Pittsburgh house from Establishment 2 A. Before they left the Chicago plant each ham had been inspected and passed by an official inspector of the Department, and under his supervision the skin of each had been branded by a hot iron with the words "Armour's *Star* U. S. Inspected and Passed, Estab. 2 A"—the meaning of these words being that the ham was one of Armour's "Star" grade or brand, and had been inspected and passed by the Department at Establishment 2 A. These hams had been pickled, boned, and tied (but not wrapped) at the Chicago plant before being sent to Pittsburgh, and on arrival there they had been subjected to the following process before being wrapped, namely: They had been immersed in clear water in an open kettle and cooked for a period of from four to six hours, and afterwards had been hung in a smokehouse for a period not exceeding two hours.

All the labels and brands used by the defendant have been approved by the Department, the particular form of wrapper hereinbefore referred to having been approved in July, 1912. As already stated, the branch house or distributing agency at Pittsburgh is not an official es-

tablishment within the meaning of the Meat Inspection Act and the Department's rules and regulations, and the wrappers on which the labels were printed were not put around the hams under the supervision of a government inspector. At the time these hams were wrapped at the Pittsburgh house, they were sound, healthful, wholesome, and otherwise fit for human food.

It is true that the facts concerning the case in hand disclose no actual harm, and probably the government's present objection could have been promptly removed without an appeal to the courts; but the case is here, and we must dispose of it according to the letter of the law. In our opinion the letter has been violated, and we recognize the government's right to insist on exact compliance with a statute whose beneficent object is to safeguard the wholesomeness of food. The act impliedly promises the public that government stamps and labels may be relied on to tell the truth, and therefore special care must be taken to maintain the scrupulous accuracy of their statements. Even innocent mistakes may have dangers; carelessness is usually likely to lead to mischief. These marks and labels must therefore be protected, and no one must be allowed to use them, except in accordance with the act and the regulations; otherwise, their value will be immediately impaired or lost and a chief purpose of the act will be frustrated. Accordingly Congress has declared:

"That no person, firm, or corporation * * * shall, without proper authority, use * * * any of the marks, stamps, tags, labels, or other identification devices provided for in this act, or in and as directed by the rules and regulations prescribed hereunder by the Secretary of Agriculture, on any carcasses, parts of carcasses, or the food product, or containers thereof, subject to the provisions of this act. * * *"

Now what the defendant did was this: It brought certain hams from Chicago to Pittsburgh. They had been properly branded, and the brand expressed the exact truth, for each ham was a "Star" ham and each had been inspected and passed at Establishment 2 A. The government does not contend that the defendant was debarred from boiling these hams and selling them branded and unwrapped, or from boiling them and wrapping them in plain paper. Apparently neither of these courses is forbidden by the law. But the defendant adopted neither course; instead, it boiled the hams and then covered them with wrappers on which were printed the labels referred to above, and these labels should not have been used for they no longer told the truth. The ham was still a Star ham, but it had now been "boiled," and that fact appeared for the first time on the wrapper. By itself the use of the word would not have been objectionable, but it was coupled with the statement that the ham—that is, the "boiled" ham—had been inspected and passed at Establishment 2 A, and this was a use of the label without proper authority, and was therefore a violation of the act. In a word, the wrapper did not tell the truth about the government inspection, and when this is said we think enough has been said.

It is unnecessary to pass upon the second count charging a violation of the Department's regulations; the sentence can be supported by the first count alone.

The judgment is affirmed.