## UNITED STATES *v.* THE FRUIT GROWERS EXPRESS COMPANY.

No. 305. Argued December 3, 1928.—Decided May 13, 1929.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell,* and *Messrs. Elmer B. Collins,* Special Assistant to the Attorney General, *William H. Bonneville* and *William J. Flood,* Special Assistants to the United States Attorney, were on the brief, for the United States.

*Mr. William S. Dalzell,* with whom *Mr. William G. Brantley* was on the brief, for appellee.

Mr. Chief Justice Taft delivered the opinion of the Court.

The case is brought here under par. 2 of § 238 of the Judicial Code, as amended by the Act of February 13, 1925, c. 229; 43 Stat. 936, 938. The paragraph was originally enacted in the Act of March 2, 1907, c. 2564; 34 Stat. 1246. It provides for appeals in criminal cases where the decision of the District Court is adverse to the United States and the defendant has not been put in jeopardy.

This review is of an indictment of 75 counts against the Fruit Growers Express Company, a corporation of Delaware, engaged in icing and re-icing refrigerator cars containing shipments of perishable commodities transported to Pittsburgh by the Pennsylvania Railroad, for misreporting ice furnished and falsifying the official records of the Railroad Company showing expenditures made in those shipments. By a contract executed by the two companies on May 1, 1925, the Express Company agreed to perform the icing and other service which the Railroad Company by and through its published schedules and tariffs had stipulated to perform with the shippers of such shipments. The Express Company, as provided in the contract, made and furnished written reports

of the quantity of ice placed by it in the bunkers of the cars for the Railroad Company at Pittsburgh. These reports were received and kept by the Railroad Company, and from them the Railroad Company prepared its reports of ice delivered, and rendered bills to the consignees of the shipments at Pittsburgh in accordance with its tariffs and schedules. In the performance of the contract, as the recitals of the counts of the indictment show, the agent of the Express Company in 59 instances delivered less ice in each car, and in 16 instances more ice in each car, than he reported to the Railroad Company, knowing that his report would be accepted by the Railroad Company as a true and accurate statement of the deliveries. The making of 50 falsified ice reports by defendant's agent was charged in counts 1 to 50. Counts 51 to 65 charged that by falsifying ice reports defendant made and caused to be made false entries in freight bills. Counts 65 to 75 were not urged by the Government as valid. Each count of the indictment involved a separate carload shipment of a perishable commodity, and the falsification by the Express Company was charged to be of an official record " kept by the Railroad Company " under the law. We have inserted in the margin the applicable parts of sections of the Interstate Commerce Act which are here involved.*

---

* Section 10 (1). "Any common carrier subject to the provisions of this Act or, whenever such common carrier is a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent or person acting for or employed by such corporation, who, alone or with any other corporation, company, person, or party, shall willfully do or cause to be done, or shall willingly suffer or permit to be done, any act, matter, or thing in this Act prohibited or declared to be unlawful, or who shall aid or abet therein, or shall willfully omit or fail to do any act, matter or thing in this Act required to be done, or shall cause or willingly suffer or permit any act, matter or thing so directed or required by this Act to be done not to be so done, or shall aid or abet any such omission or failure, or shall be guilty of any

On behalf of the defendant, a motion was made and granted by the District Court, to quash the indictment in all its counts, on the ground, first, that the quoted §§ 10 and 20 relied on to support the indictment are really intended only to apply to common carriers, their directors, officers, agents and employees, or others acting for and in the interest of carriers or in collusion with them, and not to persons whose only relation to a carrier is that of an independent contractor acting adversely to the carrier's interest, in fraud of it and without its knowledge or acquiescence; and second, that the counts of the indictment only denounce the keeping of false or inaccurate official " records kept by the carrier " and do not include records not kept by the carrier, like bills, memoranda, and other data furnished by an independent contractor, intentionally misleading the carrier or its agents in keeping its official records.

infraction of this Act for which no penalty is otherwise provided, or who shall aid or abet therein, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof in any district court of the United States within the jurisdiction of which such offense was committed, be subject to a fine of not to exceed five thousand dollars for each offense. . . ." C. 104, 24 Stat. 379, 382.

Section 20 (7). "Any person who shall willfully make any false entry in the accounts of any book of accounts or in any record or memoranda kept by a carrier, or who shall willfully destroy, mutilate, alter, or by any other means or device falsify the record of any such account, record, or memoranda, or who shall willfully neglect or fail to make full, true and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the carrier's business, or shall keep any other accounts, records, or memoranda than those prescribed or approved by the Commission, shall be deemed guilty of a misdemeanor, and shall be subject, upon conviction in any court of the United States of competent jurisdiction, to a fine of not less than one thousand dollars nor more than five thousand dollars, or imprisonment for a term of not less than one year nor more than three years, or both such fine and imprisonment. . . ." C. 3591, 34 Stat. 584, 594.

The question is really one of the construction of the two sections of the statute quoted in the margin and the intent of their penal provisions. The general object of the statute was to require that common carriers should keep reliable records of the receipts and expenditures of and for each shipment which was the subject of transportation. They were intended to be an ultimate protection, not to the carriers but to the shippers, to secure a proper accounting of the expenditures that might properly be charged to each shipper on the basis of the tariff published in accordance with law. Their importance is shown in *Interstate Commerce Commission* v. *Goodrich Transit Co.*, 224 U. S. 194, 211, and *United States* v. *Louisville & Nashville R. R.*, 236 U. S. 318, 334, 336.

It was the duty of the common carrier to provide for the icing and also to furnish reports as to the amount delivered, in a record kept by it for the information of shippers and of the Interstate Commerce Commission. But there is no reason why this duty with respect to the furnishing of ice might not be performed by an independent contractor. *Cincinnati, New Orleans & T. P. Ry.* v. *Interstate Commerce Commission*, 162 U. S. 184, 197; *Express Cases*, 117 U. S. 1, 24; *Baltimore & Ohio S. W. Ry.* v. *Voigt*, 176 U. S. 498, 504; *Chicago, St. Louis & New Orleans R. R.* v. *Pullman Southern Car Co.*, 139 U. S. 79, 89; *Berwind-White Coal Mining Co.* v. *United States*, 9 F. (2d) 429, 439; *Ellis* v. *Interstate Commerce Commission*, 237 U. S. 434, 443. Such contracts, unless forbidden, are legal; but what their civil consequences are is often a question. If the duty performed is one which the common carrier is obliged to perform, the latter is civilly liable for the failure of the independent contractor to perform the carrier's duty. Whether a breach of the duty in such case will lead to criminal liability on the part of the contractor is a question of construction of the statute. Of course, if

the common carrier were privy to the furnishing of short ice, or to the making of false preliminary data by the independent contractor, both the carrier and the independent contractor would become criminally responsible for the shortage and for the misrepresentation of the official record. But that is not the case we have here. The Railroad Company having certain duties to perform in respect of the shipments, attempts to perform them by contract with an outside person not an agent of the carrier, and is itself deceived and defrauded by the contractor and outsider in his failure to perform his contract, so that by the falsification the carrier is led into the making of the erroneous report. In such circumstances, is the outsider to be held guilty of criminality under the above statutory provisions? Congress of course could render these false statements by the defendant a crime; but has it done so in the absence of any collusion by the Railroad Company? It is a nice question, but the statute is a criminal one, and may lead to heavy penalties. A defendant under such circumstances is entitled to a reasonably strict construction of the language used to effect the particular purpose that Congress has in mind. We do not think that Congress was looking to protect an independent contractor against his servants or a common carrier against its independent contractor. A fraud as between them was a matter collateral to the intent and object of the legislation in holding the common carrier and all its agents to strict responsibility to the shipper and the Commission.

If the independent contractor colludes with the common carrier by the false data it furnishes, and the common carrier knowingly uses them, of course the contractor is nothing but an aider and abettor, and so a principal, in the keeping of the false official records; but otherwise not.

The result is, therefore, that while the independent contractor might well be penalized by a different statute for

the fraud he has committed on the common carrier, we do not think that the present statutes bring them within the scope of the crime denounced, when the common carrier and its servants are innocent of offense.

It is clear to us that the words "record or memoranda kept by a carrier" contained in § 20 mean the official record kept by the carrier and do not refer to bills or memoranda kept by the contractor as a basis on which the carrier keeps its records. The defendant's bills or memoranda are not in that sense a record at all under § 20. They are not subject to the supervision of the Interstate Commerce Commission; and it would seem that if the data proved to be dishonest and incorrect, the punishment for that, unless with the complicity of the common carrier, must be found elsewhere than in the provisions of the present Interstate Commerce Act.

This leads us necessarily to affirm the ruling of the District Court.

*Affirmed.*