**PENNSYLVANIA R. CO. v. UNITED STATES.**

No. 46431.

Court of Claims.

April 7, 1947.

JONES, Judge.

Plaintiff sues to recover taxes paid by it pursuant to the Carriers Taxing Act of 1937 and amendments thereto, 50 Stat. 435, 45 U.S.C.A. § 261 et seq., 26 U.S.C.A. Int. Rev.Code, § 1500 et seq., with respect to compensation for personal services paid by the Jersey Contracting Corporation. Since January 1, 1933, this corporation has performed work for plaintiff in loading and unloading cars and vessels and transferring freight between cars, vessels and platforms at Jersey City and Greenville, New Jersey.

Plaintiff, as a common carrier subject to the provisions of the foregoing act, filed tax returns for the quarterly periods January 1 to March 31, 1937, and April 1 to June 30, 1942, but did not include in those returns any tax on compensation paid to individuals employed by the Jersey Contracting Corporation in the performance of its contracts with plaintiff. Plaintiff subsequently filed under protest supplemental returns for both of the foregoing periods and reported therein taxes which it paid upon the compensation of these individuals who were employed by the contractor. It later filed timely claims for refund for these additional taxes which were disallowed by the Commissioner of Internal Revenue on the ground that the individuals employed by the Jersey Contracting Corporation to perform the services under its contracts with plaintiff were employees of plaintiff within the meaning of the Carriers Taxing Act.

During the taxable periods involved in this suit and both prior and subsequent thereto, plaintiff had no direct rail connection for freight destined into or from New York City. Incoming freight was unloaded from cars on plaintiff's railroad tracks in New Jersey and transported by water to New York City; and, similarly, freight originating in New York City was transferred to New Jersey where it was unloaded from boats and loaded onto cars. This work is commonly known as stevedoring or ship-freight handling work. It was a part of the shipping service performed for shippers, the charges for which were included by plaintiff under bills of lading and tariffs. Prior to 1916 the stevedoring work just described was performed by plaintiff

Guy W. Knight, of Philadelphia, Pa. (R. Aubrey Bogley, of Washington, D. C., Richard N. Clattenburg, of Philadelphia, Pa., and Cleary, Gottlieb, Friendly & Cox, of New York City, on the brief), for plaintiff.

J. A. Rees, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Richard N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

602

with its own employees. From 1916 to 1933, that work was performed for plaintiff by the Northern Contracting Company, and since 1933 it has been performed for plaintiff by the Jersey Contracting Corporation under two separate contracts which are described in our findings, one entered into in 1933 and the other in 1940. The contracts differed in some details but the same type of service was performed under both contracts and under similar conditions.

The question presented is whether these individuals who were employed by the Jersey Contracting Corporation to perform this freight handling work for plaintiff are to be considered as employees of plaintiff within the meaning of the Carriers Taxing Act. That act levies a tax on "employers" measured by the compensation paid to their "employees" which is to be deducted by the "employers" from the compensation paid to the "employees." By that act the term "employer" is generally defined as a carrier, or any company which is owned or controlled by a carrier. The parties are agreed that plaintiff is an employer within the meaning of that act and that the Jersey Contracting Corporation is not such an employer. The same act defines an "employee" as "any person in the service of one or more employers for compensation", and further provides that "an individual who is in the service of an employer * * * if he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, which service he renders for compensation."

■ There can be no question that the individuals involved rendered service for compensation and that such services were an integral part of plaintiff's service as a common carrier of freight in transit. It is also true that if plaintiff had caused this service to be performed without the intervention of contracts of the character here involved, the individuals performing those services would have been considered as employees within the meaning of the Carriers Taxing Act. However, plaintiff maintains that the Jersey Contracting Corporation was an independent contractor and that the individuals employed by that contractor to perform these services were employees of

the contractor and not employees of the plaintiff for the reason that they were not subject to the continuing authority of plaintiff to supervise and direct the manner of rendition of their services. We agree.

The Jersey Contracting Corporation was a separate corporation without any corporate or stockholding relationship with plaintiff. While the work performed by the contractor for plaintiff was a part of plaintiff's freight handling work which at one time was handled by plaintiff itself, it was a character of work which was frequently handled by carriers through independent contractors. Chicago, Rock Island & Pacific Ry. Co. v. Bond, 240 U.S. 449, 36 S. Ct. 403, 60 L.Ed. 735, and United States v. Fruit Growers' Express Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739. We are convinced both from the contracts themselves and what was done under the contracts that the Jersey Contracting Corporation was an independent contractor. The individuals who performed the services were employed, paid, and directed by the Jersey Contracting Corporation and in every sense were subject to the direction of that corporation as employer in the supervision and direction of the services rendered, as explained in detail in our findings.

■■ The statute says that an individual is an employee of a given employer if he is subject to the authority of the employer "to supervise and direct the manner of rendition of his service." A reasonable construction of this language is that the employer must have the right to supervise and direct the details of the work which the employee is called upon to perform. The most that can be said under the contracts with respect to authority for supervision by plaintiff is that the work performed by the Jersey Contracting Corporation shall be satisfactory to plaintiff, which means that the control reserved to plaintiff related to the results obtained and not as to the manner in which the services were performed in obtaining those results.

It is true that the 1933 contract provides that the employees of the Jersey Contracting Corporation shall be satisfactory to plaintiff, shall conform to rules and regulations of plaintiff while on duty, and shall

be subject to removal upon demand by plaintiff, but we do not interpret these provisions as giving any authority to plaintiff to supervise and direct the details of the services rendered, and the plaintiff did not in any sense undertake to supervise and direct the individuals employed by the contractor. Their supervision and direction in the performance of their work came solely from the contractor by whom they were employed and paid, the Jersey Contracting Corporation. These provisions are similar to those often appearing in the standard form of government contract which provides that

"The contracting officer may require the contractor to remove from the work such employee as the contracting officer deems incompetent, careless, insubordinate, or otherwise objectionable, or whose continued employment on the work is deemed by the contracting officer to be contrary to the public interest."

Even though the work being performed by a government contractor should be work which would ordinarily be performed by the Government, the inclusion of such a provision in the contract would not of itself make the persons performing the work employees of the Government.

Some point is sought to be made by defendant that the individuals who were performing these services required little or no direction and that the contractor was little more than an employment agent for plaintiff. The facts are certainly to the contrary. The work performed required special knowledge and skill which were furnished through the contractor's organization and direction. The supervision required was furnished by the contractor through a complete operating organization consisting of a general manager, superintendents, pier foremen and gang foremen, and the individuals performing the service looked to their immediate superiors for supervision and direction and not to plaintiff for orders in carrying out the work. At no time did plaintiff undertake to exercise any authority in directing the manner in which the services should be performed.

The statute also provides that the employee must not only be subject to the continuing authority of the employer in the rendition of his service but that service must be rendered for compensation. It seems most logical, as found by the court in Northern Pacific Railway Co. v. Reynolds, D.C., 68 F.Supp. 492, that the employer referred to in the statute would be the one who paid the compensation—in this instance the Jersey Contracting Corporation and not plaintiff. Admittedly the Jersey Contracting Corporation is not an employer within the meaning of the Carriers Taxing Act, and accordingly it cannot be said that the individuals employed and paid by it and subject only to its direction are employees within the meaning of that act.

The further contention is made by defendant for a broad statutory construction of the act in order to effectuate the social purpose of the legislation. However, where a statute is not ambiguous—as we think this one is not—there is no room for statutory construction such as would be necessary to bring within that act by implication individuals not otherwise specifically included therein. In addition, the exclusion of these individuals from the benefits of the Carriers Taxing Act does not deny to them the benefits of another statute, the Federal Social Security Act, 42 U.S.C.A. § 301 et seq., which was evolved about the same time for a similar purpose. The two statutes are mutually exclusive and it is clear that Congress did not intend that a broad construction should be given to either act which would result in overlapping jurisdiction. If material, a representative of the employees involved testified in this proceeding and strongly urged that they be left outside the Carriers Taxing Act and other legislation relating to employees of carriers.

This case is distinguishable from cases like the National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, which involved newsboys who sold newspapers under supervision of the publisher but whose compensation was measured by the profit on the papers sold, and United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, which concerned seamstresses working at home and paid on a piece-work basis. Not only did there exist authority for supervision and direction within the one held to be the

employer, but also there was no intervening employer such as we have in this case. As the court said in Northern Pacific Railway Co. v. Reynolds, supra [68 F.Supp. 494], in discussing those cases:

"The question in both of those cases was whether the individuals involved were themselves independent contractors or 'employees.' That situation is not present here. The individuals affected here are employees of either the contractors or of the railroad and are within the coverage and protection of either the Social Security Act and the Fair Labor Standards Act of 1938, 29 U.S. C.A. § 201 et seq., or they are governed by the special legislation enacted for railroad employees—that is, the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., the Railway Labor Act, 45 U.S.C.A. § 151 et seq., the Carriers Taxing Act of 1937, 26 U.S.C.A. Int.Rev.Code, § 1500 et seq., and the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 351 et seq. They cannot be within the scope of both schemes of legislation as they are mutually exclusive."

A different conclusion might be said to have been reached in Wabash R. Co. v. Finnegan, D.C., 67 F.Supp. 94, but the elements of supervision and direction by the carrier over the employees of the contractor, alluded to by the court, were so much greater than in the case at bar as to suggest a distinction between the two cases on their facts.

■ Finally defendant urges that the Act of July 31, 1946, Public Law 572, which amended the statute with which we are concerned and set up a new definition of employees within the meaning of that act, is to be interpreted as a clarifying amendment which can be used to interpret the act in effect during the period involved in this proceeding. In the first place, we fail to find anything in the act or in the legislative history which would give to the statute a retroactive effect and make it applicable to the period with which we are concerned. In addition, when hearings were being held on a provision of that act which the proponents stated would bring the very individuals with which we are concerned under the act, officials of the Jersey Contracting Corporation as well as proponents of the legislation appeared as witnesses. After a full consideration of the provision in question, it was eliminated from the act, and we find nothing in the new definition of "employee", when considered as a whole and in the light of legislative history, which changes our conclusion previously expressed that the individuals employed by the Jersey Contracting Corporation for the performance of the work involved under the contracts in question are not employees of plaintiff within the meaning of the Carriers Taxing Act.

■ Taxes cannot be escaped by skillfully devised contracts. On the other hand, the terms of a contract may not be stretched beyond their natural meaning in order to accomplish social ends however desirable. The plaintiff had found it desirable and practicable to have this special work done by independent contractors long before the taxing acts were passed. Contracts of the same type antedated both the taxing and social purpose legislation. The contracts were evidently made on the basis of practical operation and were not made in an effort to escape the consequences of either type of legislation. Since the facts of the case do not bring the plaintiff's contract within the terms of the Carriers Taxing Act we are not authorized to do so by judicial construction.

Plaintiff is entitled to judgment for $16,-352.97 with interest as provided by law on $5,230.92 from December 31, 1943, and on $11,122.05 from September 19, 1944.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.