KELM, Collector of Internal Revenue, v.
CHICAGO, ST. P., M. & O. RY. CO.
No. 14710.

United States Court of Appeals
Eighth Circuit.

Aug. 10, 1953.

Maurice P. Wolk, Special Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to Atty. Gen., and George E. Mac-Kinnon, U. S. Atty., Minneapolis, Minn., on the brief), for appellant.

Nelson Trottman, Chicago, Ill. (Warren Newcome, St. Paul, Minn., Nye F. Morehouse and Lowell Hastings, Chicago, Ill., on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by the Chicago, St. Paul, Minneapolis & Omaha Railway Company (hereinafter referred to as the Omaha) against the Collector of Internal Revenue (whom we shall refer to as the Government) to recover federal employment taxes assessed and paid for the year 1947 under the Railroad Retirement Tax Act, Subchapter B of Chapter 9 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 1500 et seq.[1]

The taxes assessed against the Omaha and paid by it were upon the earnings of persons who worked on the Omaha's property but who were hired, directed, supervised, paid, and fired by the Shipley Com-

---

1. Prior to its amendment on July 31, 1946, 60 Stat. 722, the Act was known as the Carriers Taxing Act of 1937, 50 Stat. 435, 45 U.S.C.A. § 261 et seq.; Title 26 (Int.Rev.Code) U.S.C., 1940 Ed., § 1500 et seq.

832

pany, a partnership which, under a contract with the Omaha, performed services for it in connection with the operation of the railroad.

The Omaha asserted that it was not liable for the taxes in suit. This was denied by the Government. The case was tried to the court, which determined that the Omaha was not liable under the Railroad Retirement Tax Act for taxes with respect to the earnings of the employees of the Shipley Company. 104 F.Supp. 745. From the ensuing judgment, the Government has appealed.

There is no dispute about the facts. For more than forty-five years the Omaha has contracted for services such as the Shipley Company performed for it under contract in 1947 and had continuously since 1923 performed for it under contracts. Generally stated, these services had to do with the placing of coal in bins or chutes along the railroad tracks for use in locomotives, coaling of locomotives, storing ice, icing refrigerator cars, servicing heaters in such cars, cleaning freight cars, transferring shipments from bad order cars, and unloading livestock for feed, water and rest, and reloading it. Similar contract services rendered by the Shipley Company were involved in the case of Reynolds v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 8 Cir., 168 F.2d 943, which case, together with Reynolds v. Northern Pacific Ry. Co., 8 Cir., 168 F.2d 934, certiorari denied Railway Emp. Dept. v. Northern Pac. R. Co., 335 U.S. 828, 69 S.Ct. 55, 93 L.Ed. 382, and Reynolds v. Great Northern Ry. Co., 8 Cir., 168 F.2d 944, was decided by this Court in 1948.

In the Northern Pacific, Great Northern and Omaha cases just referred to, this Court ruled that the railroads were not liable under the Carriers Taxing Act of 1937 for employment taxes for years prior to 1947 with respect to employees of independent contractors performing services comparable to those performed by the Shipley Company for the Omaha in the year 1947.

The contention of the Government is that after January 1, 1947, the Railroad Retirement Tax Act, which amended the Carriers Taxing Act of 1937, brought within the coverage of the Act the employees of the Shipley Company and of other railroad contractors performing similar services on railroad property, and made the railroads liable for taxes upon the earnings of such employees. The amendment upon which the Government relies is found in § 1532(d) of Title 26 U.S.C.A. Int.Rev.Code. Prior to July 31, 1946, that section, which defined "service", read as follows, Title 26 U.S.C., 1940 Ed., § 1532(d):

"An individual is in the service of an employer whether his service is rendered within or without the United States if he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, which service he renders for compensation". 45 U.S.C.A. § 261(d).

After the amendment of July 31, 1946, § 1532(d) read:

"An individual is in the service of an employer whether his service is rendered within or without the United States if (i) he is subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, *or he is rendering professional or technical services and is integrated into the staff of the employer, or he is rendering, on the property used in the employer's operations, other personal services the rendition of which is integrated into the employer's operations,* and (ii) he renders such service for compensation * * *."

It was the insertion of the language "or he is rendering, on the property used in the employer's operations, other personal services the rendition of which is integrated into the employer's operations" upon which the Government bases its contention that after January 1, 1947, the Omaha became liable for employment taxes on employees of the Shipley Company performing railroad services on the Omaha's property.

Under the definition of "employer" in § 1532(a), Title 26 U.S.C.A.Int.Rev.Code, the Omaha is unquestionably an "employ-

er". An "employee", under § 1532(b), "means any individual in the service of one or more employers for compensation", and, under § 1532(d), an individual is purportedly in the service of an "employer" if he is rendering personal services, on the employer's property, "the rendition of which is integrated into the employer's operations". Therefore, it is argued that any individual who, on the property of the Omaha, renders a personal service in the furtherance of its operations, such as icing refrigerator cars, coaling locomotives, or unloading bad order cars, is one of its employees for the purposes of the taxing act in suit, regardless of who hired him, who pays him, or who supervises or directs the manner in which he performs his services. The Government asserts that all of the employees of the Shipley Company doing railroad work for the Omaha upon its property are clearly covered by the Act, and that the Omaha is liable for employment taxes with respect to them.

In the case of Reynolds v. Northern Pacific Ry. Co., supra, 168 F.2d 934, 939, 942–943, we referred to the July 31, 1946, amendment to § 1532(d) respecting the definition of "service" as indicating that Congress had not intended that the employees of independent contractors doing railroad work should be covered by the Carriers Taxing Act of 1937 for years prior to 1947. The amended Act had only an incidental significance in the Northern Pacific case and its companion cases. However, upon the assumption that the amendment of July 31, 1946, meant all that its language was susceptible of meaning, we expressed the view that the coverage of the Act had apparently been extended to include, after January 1, 1947, the employees of independent contractors performing railroad services on railroad property. What we said was, of course, not intended as a ruling upon the question of the scope or effect of the amendment. This we made clear in a subsequent per curiam opinion. Reynolds v. Chicago, St. P., M. & O. R. Co., 8 Cir., 168 F.2d 944. We had had no occasion to consider the legislative history of the amendment.

It is interesting to note that the Court of Claims in the case of Pennsylvania R. Co. v. United States, 1947, 70 F.Supp. 595, 604, 108 Ct.Cl. 419, in which the question of the liability of the railroad for employment taxes under the Carriers Taxing Act of 1937 with respect to employees of an independent contractor was involved, intimated that no significant change in the taxing act had been made by the amendment of July 31, 1946, "when considered as a whole and in the light of legislative history".

The District Court in deciding the instant case followed the decision of the Court of Appeals for the Tenth Circuit in Nicholas v. Denver & Rio Grande Western R. Co., 195 F.2d 428, which involved the same question. The Tenth Circuit held that the employees of an independent contractor performing services for the Denver & Rio Grande Western R. Co., on its property, were not within the coverage of the Railroad Retirement Tax Act. That court said of the amendment upon which the Government relied in that case and relies in this case (pages 432–433 of 195 F.2d):

"When the new language contained in the act is read in the light of its context, in the light of other related provisions of law, and in the light of the entire legislative history of the amendatory act, there is no sustainable basis for the contention that the added language was intended or designed to bring within the scope of the act an independent contractor such as Lamberg and his employees. While the bill as originally introduced was intended among other things to bring independent contractors of that kind and their employees within the purview of the legislation, and whatever the purpose of Congress may have been in other respects, the legislative history indicates clearly that the final action of Congress represented a deliberate intent and purpose to leave such contractors and their employees outside the scope of the act insofar as employment taxes were concerned. And that ultimate Congressional intent and purpose be-

ing clear, courts are not free to construe the act otherwise."

The legislative history of the Act in suit is adequately and accurately stated in Judge Bratton's opinion in the Denver & Rio Grande Western R. Co. case, and need not be repeated. See pages 431–432 of 195 F. 2d. It is sufficient to say that the proponents of the bill introduced in Congress to amend the Carriers Taxing Act of 1937 sought to enlarge its coverage and to make it applicable to independent contractors such as the Shipley Company and their employees doing railroad work, by expanding the definition of "employer" to expressly cover such contractors. No one reading the legislative proceedings resulting in the rejection of that proposed change can have any doubt that Congress intended to deny the extensions of coverage proposed.

■ The Government, however, contends that recourse may not be had to the legislative history of the amended Act because the language of the amendment relied upon is plain and unambiguous. That contention presents the doubtful question in this case. If the language of the amendment is taken at its full face value, it means what the Government says it means and what we thought it meant when in 1948 we decided the Northern Pacific and companion cases. It is not our understanding that legislative history may be resorted to for the purpose of creating an ambiguity in the language of a statute which otherwise would not be ambiguous. Congress enacts laws; not the legislative proceedings underlying them. If one may not rely upon plain statutory language as expressing the meaning of an act and must search legislative history in order to determine whether or not Congress meant what it said, then the history of legislation should, at least, be made as accessible as the law to which it relates, so that one may be advised when and why a statute and its history part company.

We know, from the proceedings which resulted in the passage of the Railroad Retirement Tax Act, that, after the bill for the Act passed the House, the Senate undertook to strike from the bill all of the language which it was thought would bring contractors such as the Shipley Company and its employees within the coverage of the Act. Whether the Senate succeeded in its attempt is, to say the least, doubtful.

The language of the amendment which was not eliminated from the bill, and upon which the Government now relies, is, we think, no more ambiguous than was that of the statute considered by this Court in the case of Warner v. Dworsky, 194 F.2d 277, 279–280, or that involved in Missouri Pac. R. Co. 5¼% Secured S. B. C. v. Thompson, 8 Cir., 194 F.2d 799, 803–804. One reasonably may believe that Congress should be held strictly accountable for the language which it uses in a statute, and if any corrections are needed they should be made by that body and not by the courts. See Crooks v. Harrelson, 282 U.S. 55, 60, 51 S. Ct. 49, 75 L.Ed. 156.

■ This Court, however, has recognized that in determining the purpose and coverage of a taxing statute, legislative history may not safely be ignored and must be considered, and that the language of such an act cannot always be accorded its ordinary meaning. In Helvering v. Rebsamen Motors, Inc., 8 Cir., 128 F.2d 584, 587, this Court, in referring to the decision in Helvering v. Nebraska Bridge Supply & Lbr. Co., 115 F.2d 288 (reversed by the Supreme Court, 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111) construing a taxing act said:

"We followed the rule that the use by a legislative body of words having definite meanings creates no ambiguity and that such words are to be taken and understood in their plain, ordinary and popular sense. We have come to realize that that rule is not always a safe guide to follow in construing the language of a taxing statute. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591. It is our understanding, however, that the rule is still to be applied unless it can clearly be seen that Congress used the words in question in a broader or different sense than that which would

ordinarily be attributed to them. See Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731, 734, 735."

We have also recognized the desirability of uniformity of decision among the Circuits, particularly with respect to the coverage of taxing statutes. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591 and cases cited. We have with some misgivings concluded that in the instant case resort properly may be had to the legislative history of the Railroad Retirement Tax Act for determining the purpose and scope of the language of the amendment here in controversy.

It is safe to say that neither the proponents nor the opponents of the bill which as amended became the Railroad Retirement Tax Act regarded the amendment, upon which the Government now relies, as having any substantial bearing upon the coverage of the Act, and that if there had been any intimation that the amendment was intended to have an effect such as is now claimed for it, it would have been stricken from the bill.

The Chairman of the Railroad Retirement Board, in explaining to the House Committee the proposed amendments, made the following statement about the changes in the section with which we are concerned:

*"Clarification of definition of 'employee.'* —The several acts proposed to be amended by H.R. 1362 define an employee, in part, in terms of persons 'in the service of' an employer. And a person is 'in the service of' an employer if he is 'subject to the continuing authority of the employer to supervise and direct the manner of rendition of his service, which service he renders for compensation.' The Board has found that professional and technical persons, many of whom are commonly regarded as employees, typically decide for themselves the manner in which they will render service; a railroad vice president, for example, having jurisdiction over the railroad's medical department would not think of telling a doctor how to perform a surgical operation. And the doctor would probably resent direction in such a matter as unwarranted lay interference with his professional conduct. But the doctor may obviously be an employee of the railroad; and the Board has so held in many cases. But there are cases in which such a holding would seem to be appropriate, but in which the facts cannot be fit into the statutory definition; and others in which an appropriate ruling becomes unduly difficult. The provision of H.R. 1362 that a person rendering professional or technical services is in the service of an employer if he 'is integrated into the staff of the employer' will be beneficial to the administration of the act.

"The Board has held, in numerous cases, that individuals rendering services under a contract with a railroad are in fact employees of the railroad by virtue of a finding that such individuals are 'subject to the continuing authority of "the railroad" to supervise and direct the manner of rendition' of their service. As part of the clarification process set out in H.R. 1362, such contractors are made employers. This may be reasonable where a large number of persons are working for the contractor, but it might result in the removal from coverage of some individual contractors who themselves perform all the services under the contract. This result, as is desirable, is avoided in H.R. 1362 by appropriate modification of the subsection dealing with 'in the service of an employer.'"

Apparently the proponents of the amendment, in order to avoid the anomalous situation of making an "employer" out of an individual contractor who had no employees and who himself did all the work contracted for, proposed to make him an "employee", instead of an "employer", under the Act. Therefore it appears that the amendment in suit was not intended to relate to independent contractors such as the Shipley Company and its employees, but only to a self-employed individual who was rendering service to a railroad under contract.

■ A ruling that the Railroad Retirement Tax Act required the Omaha, after January 1, 1947, to pay employment taxes

with respect to the earnings of the employees of the Shipley Company would be contrary to the clearly indicated intent of Congress not to extend the coverage of the Act to such contractors and their employees.

The judgment appealed from is affirmed.