**Harold K. BREHMER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3-60-198.**

United States District Court
D. Minnesota,
Third Division.

March 1, 1961.

Brehmer & McMahon, by C. Stanley. McMahon, Winona, Minn., for plaintiff.

Fallon Kelly, U. S. Atty., St. Paul, Minn., John T. Piper, Atty., Dept. of Justice, Washington, D. C., for defendant.

DONOVAN, District Judge.

Plaintiff taxpayer brings this action against defendant to recover a refund of income taxes paid for the calendar years 1955 in the amount of $2,724.76 with interest and 1956 in the amount of $168.21 with interest.

The taxpayer's unrebutted testimony at trial before the Court indicates the facts as follows:

During 1955 and 1956 and for many years prior to that plaintiff was the sole support of his aged mother, Mrs. Anna Runge. Until 1952 Mrs. Runge had resided with the plaintiff and his wife and children in his home. In that year, however, Mrs. Runge had a stroke and was hospitalized for some time, after which arrangements were made for her to enter a convalescent home. Here she remained until September 1956 when she fell and broke her leg and had to be hospitalized. She died in December 1956 while still hospitalized without ever returning to the home of plaintiff.

During the years from 1952 until Mrs. Runge's death in 1956 taxpayer's family status changed by reason of the death of his wife and the marriage of his daughter so that during the years in question, 1955 and 1956, plaintiff resided alone in his home. He at all times, however, kept his mother's room intact so that it could always be available to her in the expectation of recovery from her illness permitting her return, even though there was little likelihood of that event.

The question before the court is whether or not during the taxable years 1955 and 1956 the plaintiff was the "head of a household" within the meaning of the Internal Revenue Code of 1954, § 1(b) (2), 26 U.S.C.A. § 1(b) (2).

Plaintiff contends a taxpayer can qualify as the head of a household in either of two ways:

(1) If he maintains as his home a household which consists of any person who is his dependent as determined by the Internal Revenue Code of 1954, § 151. That is, he must live in the home himself and the dependent must be a member of the same household.

(2) If he maintains the principal abode of either his father or mother providing that they are also dependents under § 151 supra. This need not necessarily be the taxpayer's home.

The defendant contends that plaintiff is not entitled to head of household treatment under § 1(b) (2) (A), supra, because Mrs. Runge's principal place of abode was not at the home of plaintiff since plaintiff could not reasonably have anticipated her return in view of the condition of her health.[1] Defendant further contends that plaintiff does not qualify

1. T.R. 1. 1–2(c) – (1).

for head of household treatment by reason of § 1(b) (2) (B) supra because the statute requires plaintiff to maintain a household for his father or mother either in his own home or in a separate building. The maintenance of a parent in a convalescent or nursing home by paying for board and room does not qualify as establishing a household for the parent.[2]

Considering first the claim of the taxpayer that he qualifies under § 1(b) (2) for head of household status, it is necessary to have recourse to the facts demonstrating that Mrs. Runge was a member of his household during the years in question. It is undisputed that she was not living in plaintiff's home during the years in question. Plaintiff argues, however, that head of household status continues even though the qualifying dependent is absent from the taxpayer's home if the absence is temporary and is due to necessity such as illness.[3]

In the Hein case supra the taxpayer had a dependent seventy-two year old sister who had been living with him for twenty-five years. She had been confined to various mental institutions for six years with little or no hope of recovery. The court reasoned that there was no intention to end the sister's relationship to the household which was kept open for her whenever she could return, and granted head of household status to the taxpayer.[4]

In the Reardon case supra the taxpayer had an unmarried daughter, in her thirties, who had left South Dakota and taken jobs elsewhere. She had been living in New York for three years when taken ill and confined to a sanitarium for the mentally ill. She had voted and filed income tax returns from South Dakota and her room and furniture were kept for her ultimate return. Citing the Hein case the court held the taxpayer was entitled to head of household status and reasoned that though a person may have more than one residence, the principal one is the place to which it is always intended that he return and that is controlling.

Clearly the fact situations in both the above cases are very similar to the instant case. In both cases taxpayer's qualifying dependent was absent for long periods due to illness with almost no reasonable prospect that she would ever return to the home of the taxpayer. Nonetheless, both courts held this was not fatal to the taxpayer's claim for head of household status.

In the Hein case (which is cited as chief authority in the Reardon case) the court, after stating that neither the court nor counsel had been able to find any case in which the question involved therein had been decided, looked to the purpose and intent of the applicable section of the Internal Revenue Code and adopted that construction and application which best gave effect to such purpose and intent and concluded as follows at pages 832 and 833:

"Based on the above-mentioned committee reports, which we have quoted in part, it is our opinion that the basic purpose and intent of sec-

---

2. Rev.Rul. 57–307, 57–2 Cum.Bull. 1957–2, p. 12.

3. In support of his contention plaintiff cites two recent cases, Hein v. Commissioner of Internal Revenue, 28 T.C. 826, and Reardon v. United States, D.C.S.D., 158 F.Supp. 745.

4. It is perhaps worthy of note that Murdock, J. dissenting in the Hein case supra argued at page 836 of 28 T.C. that it was unreasonable to assume that the qualifying dependent would ever return to the household of taxpayer because, among other reasons there stated, "there is no showing that the house in which he [taxpayer] lived during the taxable year contained any special arrangements for her return such as, for example, her own room, her own furniture, her own clothes, or other possessions, which might show that the petitioner really was maintaining a home for her in anticipation of her possible return."

In the instant case plaintiff testified that his mother's room, with all her clothes, furniture and other possessions, was kept intact.

tion 12(c) [5] is to extend to unmarried householders, some of the benefits of the income splitting which is available to married couples—if the household, in addition to being the taxpayer's own home, is also the principal abode of his unmarried child, stepchild, grandchild, or any other person who qualifies as a dependent and with whom, as such, he shares his income. The Congress, by employing the adjective 'principal' in referring to the abode of the person whom we shall hereinafter call the 'dependent,' has implied that such person may have more than one abode. And the committee reports in conformity with such implication, have made it abundantly clear that the benefits of the statute are not to be denied, where the dependent is absent because of special circumstances, such as attendance at school or for reasons of health, that do not permanently sever his ties to the home, 'as a member of such household.'

"The Treasury regulations, also, indicate that the statute is not to be given a narrow or restricted construction. These regulations point out that the required 'household' may continue throughout the taxable year, notwithstanding that the physical location of such household may have changed during the year. They also state (even more broadly than the words of the statute itself) that either the taxpayer or the dependent will be 'considered' as occupying the household for the entire taxable year, notwithstanding a 'nonpermanent' failure of either to occupy the common abode by reason of illness, education, business, vacation, military service, or a child custody agreement. No distinction is made between dependents who are infants and those who are aged. And, except in the case of a child

custody agreement (mentioned in the regulations), no limitation or restriction is placed on the period during which any absence may continue to be considered as nonpermanent.

"With these principles in mind, we approach the problem of what tests should be applied, in determining whether a household of which a dependent has long been a member should continue to be 'considered' as his 'principal place of abode'— even though he is confined in a hospital or sanatorium for reasons of health though his period of confinement may have been long, and though there may be only slight chance for his recovery. None of the tests suggested in the committee reports and in the regulations deals specifically with illness; and in our opinion they were intended to be guides, and not to provide rules of thumb or formulas for handling all cases and situations which might arise. Rather, we think that in determining the principal place of abode, each case must be decided on its own particular facts and circumstances."

The government's principal contention in the Hein case, both at trial and on brief, as in the instant case, was that because of the dependent's age and her slight chance for recovery, it was unreasonable to assume that she would return to the taxpayer's household. In answering that contention the court said at page 835:

"* * *[W]e think that such contention is based on misapplication of the congressional intent; and that the true test is not whether the return may be prevented by an act of God, but rather whether there are indications that a new permanent habitation has been chosen. Having in mind the basic purpose of the statute, we are unwilling to conclude

5. This section refers to the 1939 Code which was adopted in substantially the same form in the 1954 Code, Sec. 1(b)

(2) with no changes affecting the instant case.

that it was the intention of the Congress that, where a child or other dependent is sent to a hospital under circumstances that make it likely he will die, this, in itself, is sufficient to change the principal place of abode. And we think this is true, regardless of the age of the dependent. It is our opinion, in the instant case, that neither the age of the dependent, nor the length of her confinement with illness, nor the possibility or even probability that death might intervene before she returns, is sufficient to make her absence permanent for purposes of section 12 (c)."

■ One distinction between the Hein and Reardon cases and the instant case is the fact that in both Hein and Reardon the qualifying dependent was confined for mental illness and it was shown that if there ever was a recovery the dependent would return to the household of the taxpayer. In the instant case, as defendant strongly asserts, Mrs. Runge was confined to the nursing home because of the infirmities of age. She suffered from diabetes, apoplexy and some degree of senility. After confinement to a hospital for aggravation of one or more of these maladies or for injury, she did not return to the home of the taxpayer but was returned to a nursing home. This distinction when viewed in the light of the over-all intent of the statute is not sufficient to distinguish these cases. It is well established law that, where there is doubt or ambiguity in the interpretation of tax laws, such doubt or ambiguity shall be resolved in favor of the taxpayer.[6] If the taxpayer has found a loophole, it is up to Congress and not the courts to amend the law so that it is clear and unambiguous.

■ Applying the law as quoted in the statute and interpreted by the courts supra, it is the opinion of this Court that the principal place of abode of Anna Runge during the years 1955 and 1956,

within the meaning of said statutory and regulatory authorities, was the household of the plaintiff, that plaintiff has met all the requirements necessary to maintain head of household status within the statutory definitions herein cited, and was entitled therefore to the benefit of the rates available to a head of household.

Plaintiff may submit findings of fact, conclusions of law and form of judgment consistent with the foregoing.

It is so ordered.

Defendant may have an exception.

6. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Kelm, D.C.Minn., 104 F.Supp. 745, 747, affirmed 8 Cir., 206 F.2d 831.