**UNITED STATES of America,**
**Plaintiff,**

v.

**FRANK J. PETRINI MEAT COMPANY,**
**a corporation, and Armour and Company, a corporation, Defendants.**

**UNITED STATES of America,**
**Plaintiff,**

v.

**PATEK–ECKLON COMPANY, Inc., a**
**corporation, Defendant.**

Nos. 37639, 38740.

United States District Court
N. D. California, S. D.

March 18, 1963.

Cecil F. Poole, U. S. Atty., Robert N. Ensign, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Pillsbury, Madison & Sutro, John B. Bates, Anthony P. Brown, San Francisco, Cal., for defendant Armour & Co.

Eisner & Titchell, San Francisco, Cal., for defendant Patek-Ecklon Co., Inc.

HARRIS, Chief Judge.

In United States v. Armour & Co., No. 37639, and United States v. Patek-Ecklon Co., No. 38740, each defendant has made a motion for judgment of acquittal. In both cases defendant has been charged with a violation of Title 21 U.S.C.A. § 78 of the Meat Inspection Act. In the Patek-Ecklon case defendant has also been charged with violation of Section 79 of the same Act.[1]

In the count which is found in both indictments, each defendant is charged with having "unlawfully transported * * * a quantity of meat of cattle * * * which had not been marked 'inspected and passed'" as required by 21 U.S.C.A. § 78. In the Patek-Ecklon case defendant is charged in the second count with having falsely represented in a shipper's certificate that the meat in question had been marked "U. S. inspected and passed by the Department of Agriculture" when as a matter of fact it had not been so marked as required by Title 21, Section 79.

The cases were tried on a stipulation of facts prepared by the parties. The stipulation in each case disclosed that the meat had been processed in a government-inspected plant and had been approved as wholesome and sound. In each case the meat had been properly prepared, inspected, passed and marked for shipment from its place of origin and thence transported to its initial destination.

In the Armour case the defendant company required certain beef tenderloins in Nampa, Idaho, from whence the original carcasses had been shipped. The 318 pounds of beef tenderloins which were returned to the place of original shipment represented inside cuts and hence did not contain the markings originally placed upon the carcasses.

In Patek-Ecklon certain beef clods which had been inspected, passed and marked upon being processed and shipped, had thereafter been trimmed by the recipient in anticipation of sale of the meat in question. The mark was removed when the meat was trimmed. Unexpectedly, defendant then received an order to ship 590 pounds of beef clods to Portland, Oregon, to Armour & Co. 32 of some 33 clods shipped no longer disclosed the identifying government markings of "inspected and passed" when they were shipped to Oregon, the shipper's certificate to the contrary notwithstanding. It is for this reason that defendant has been charged with a violation of both Section 78 (shipment of meat not marked) and Section 79 (falsely representing in a shipper's certificate that meat has been marked "inspected and passed").

Each defendant contends that its conduct as demonstrated by the stipulation of facts, relieves it from liability under the indictments brought against it.

The purpose of the Meat Inspection Act, as set forth in its history and as buttressed by interpretation over the years, establishes the fact that it was directed toward abuses in the meat processing industry which were prevalent around the turn of the century. The law was enacted in order to insure that meat would be sound, healthful and wholesome when shipped in inter-state commerce to its ultimate destination. Marking was part of the process which apprised the consumer that he was purchasing meat which had been inspected and passed.

The facts disclose that the meat in the instant case had been processed in plants which met the specifications required by law in every detail. After careful examination and inspection, the carcasses

---

1. Title 21 U.S.C. § 88. "Any person, firm, or corporation * * * who shall violate any of the provisions of sections 71–91 of this title shall be deemed guilty of a misdemeanor and shall be punished on conviction thereof by a fine of not exceeding $10,000 or imprisonment for a period of not more than two years, or by both such fine and imprisonment, in the discretion of the court."

had been marked and passed by the Department of Agriculture. Thus, there was full compliance with the requirements of law. The sole question for decision in the single count indictment in the Armour case and the first count in the Patek-Ecklon case is whether the subsequent shipment of a part of meat which had been inspected, examined and marked as inspected and passed gave rise to a violation of law because of the carelessness or inadvertence, at most, of an employee in reshipping cuts which no longer contained the official stamp of approval.

Since the court is asked to construe a criminal statute it must do so in a narrow and strict manner as required for the interpretation of criminal statutes. Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640; United States v. Fruit Growers Express Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739. Section 78 specifies that "No * * * corporation shall transport * * * from one State * * * to any other State * * *, any carcasses or parts thereof, meat, or meat food products thereof which have not been inspected, examined, and marked as 'inspected and passed' * * *." Under a literal interpretation of this language, neither defendant has committed an offense under Section 78 by reason of his shipment of meat, as more particularly set forth in the stipulation of facts referred to above. Each defendant, in reshipping meat which had been "inspected, examined and marked" as "inspected and marked" literally complied with the language of the section, even though at the time of the reshipment the meat was no longer marked as "inspected and passed."

Concededly, it is desirable that meat which meets the requirements of the section so indicate on the body of the product, as was intended by law, but the prime requisite is that the meat be inspected and examined as meeting the requirements of the rules and regulations prescribed by the Secretary of Agriculture. This, the defendants did in the first instance in each case. To hold them guilty of an offense which carries with it a penalty of two years imprisonment and $10,000 fine, would be to construe the law in a broad, rather than a narrow and literal manner, contrary to a proper mode of interpretation of a criminal statute. United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443; Jerome v. United States, supra; United States v. Fruit Growers Express Co., supra.

Counsel for the government realizing the gravity of the charge, suggests that the court impose a minimum penalty and thus attempt to give some vitality to the proceeding. Further, counsel points out, that any other construction would render the statute difficult to enforce from the administrative view. The simple answer is that negligence or clerical error cannot in the case at bar give rise to criminal conduct. Harrison v. Vose, 9 How. 372, 50 U.S. 372, 378, 13 L.Ed. 179; Ex Parte Webb, 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; Sutherland: Statutory Construction (3rd ed. 1943), Vol. III, Sec. 5605; In re Tartar, 52 Cal.2d 250, 257, 339 P.2d 553. The statute as presently framed was never intended to accomplish such a broad and unconscionable purpose and cannot be enlarged by judicial sanction and interpretation merely to meet the desire of the agency involved.

The government seeks support for its position in United States v. Hart Motor Express, Inc., D.C., 160 F.Supp. 886. In this case the defendant was charged by way of information with violating the provisions of Title 21 U.S.C.A. § 79 in that, without proper authority, he detached and knowingly defaced, altered and destroyed, by breaking, an official seal of the Department of Agriculture. This case is clearly distinguishable.

In United States v. Rohe & Bros., 2 Cir., 218 F. 182, 184, the court said:

"Personally, I do not think the first count charges a crime under the Meat Inspection Act. That act covers two classes of cases, the one where the establishments are inspected, and the other where they

are not. Where the establishment is inspected, and subject to inspection, and the inspection laws are fully complied with, I do not think it was ever the intention of Congress to make a man a criminal, even though he had fully complied with the requirements of the Department of Agriculture."

With respect to the second count in the indictment returned against Patek-Ecklon Company, Inc. plaintiff contends that the error on the part of defendant in preparing a shipper's certificate which incorrectly stated that the meat goods were marked "U. S. inspected and passed by Department of Agriculture" when, as a matter of fact they were not so marked, is itself an offense regardless of the intent of the defendant.

Count Two, as distinguished from Count One, deals with the actual documentation of the shipment. Section 79 provides in part: "No person * * * shall forge, counterfeit, simulate, or falsely represent * * * any certificate in relation thereto." The avowed purpose of this section is manifest: It makes it a crime to attempt to pass off or palm off non-inspected meat as "inspected" by forged, counterfeited, simulated or false certificates. Manifestly, the superintendent who prepared the bill of lading did not inspect each clod to determine whether the mark still remained after the trimming process.

Within the contemplation of the factual situation at bar the meat was inspected and passed and the meat was marked; that is to say, the primal cuts (clods) were so marked; but the marks were removed in the trimming process. The indictment herein charges that the shipper's certificate was prepared by defendant and that the defendant did

"falsely represent * * * that the meat referred to therein * * * had been 'U.S. Inspected and passed by the Department of Agriculture' and was so marked at the time of such offer for transportation; whereas, in truth and in fact, the

meat was not marked 'U.S. Inspected and passed by the Department of Agriculture' at the time of such offer for transportation, in violation of Title 21, United States Code, Section 79."

■ The facts establish, and the court so finds, that there was no attempt to deceive, and no attempt to defraud or pass off as inspected meat which was non-inspected. The language of Section 79 is clear. It is designed and intended to prevent the deceitful or fraudulent passing off of non-inspected meat. It is hornbook law that to falsely represent carries with it an intent to deceive or defraud which is plainly absent in the case at bar. Imholte v. United States, 8 Cir., 226 F.2d 585; United States v. Flynn, 2 Cir., 216 F.2d 354.

In the case of United States v. Achtner, 2 Cir., 144 F.2d 49; 52, the court stated that "falsely" as used in a criminal statute suggests something more than a mere untruth.

Reliance is placed on Armour & Co. v. United States, 3 Cir., 222 F. 233. This case is clearly distinguishable and, in fact, supports defendant's position when properly read and understood. In the Armour case (p. 235), defendant brought certain hams from Chicago to Pittsburgh.

"They had been properly branded, and the brand expressed the exact truth, for each ham was a 'Star' ham and each had been inspected and passed at Establishment 2 A. The government does not contend that the defendant was debarred from boiling these hams and selling them branded and unwrapped, or from boiling them and wrapping them in plain paper. Apparently neither of these courses is forbidden by the law. But the defendant adopted neither course; instead, it boiled the hams and then covered them with wrappers on which were printed the labels referred to above, and these labels should not have been used for they no longer told the truth. The ham was still a Star

 

ham, but it had now been 'boiled,' and that fact appeared for the first time on the wrapper. By itself the use of the word would not have been objectionable, but it was coupled with the statement that the ham—that is, the 'boiled' ham—had been inspected and passed at Establishment 2 A, and this was a use of the label without proper authority, and was therefore a violation of the act. In a word, the wrapper did not tell the truth about the government inspection, and when this is said we think enough has been said."

The court in passing upon the problem stated that the marks and labels

"must therefore be protected and no one must be allowed to use them, except in accordance with the act and the regulations; otherwise, their value will be immediately impaired or lost and a chief purpose of the act will be frustrated."

It is plain from the Armour case that the original product had been changed through the boiling process. Hams were repacked and rewrapped and the defendants engaged in affirmative conduct in relabeling the packages without proper authority. The wrappers themselves did not tell the truth.

In the case at bar the meat in the first instance was inspected. There was no change of identity of article by a boiling process, or any other process, save and except through trimming and cutting. There is no misstatement nor misrepresentation, for the primal cuts themselves bore the insignia of approval. True, through physical circumstance, the ultimate product as cut and trimmed did not bear the stamp.

The facts herein are far removed from that of Armour.

■ Finally, this is a criminal proceeding and all doubts must be resolved in favor of the accused. Such resolution of doubt requires the court to grant the several motions to dismiss and enter judgments of acquittal.