**UNITED STATES v. DE CADENA et al.**

No. 10728.

United States District Court
N. D. California, N. D.

June 6, 1952.

Thomas W. Martin, Asst. U. S. Atty. Northern D. of California, Northern Div., Oroville, Cal., for plaintiff.

William T. Sweigert, San Francisco, Cal., for Ramon Marquez.

Francis B. Dillon, Sacramento, Cal., for defendants Josefa Holquin de Cadena, Dionicio Morales-Heredia, and Jose Martinez-Carrillo.

OLIVER J. CARTER, District Judge.

Defendants stand indicted for an alleged conspiracy to violate the immigration laws of the United States, to wit: Section 8 of the Immigration Act of 1917, as amended, Public Law 283, 82nd Congress, 2nd Ses-

sion, approved March 20, 1952; 8 U.S.C.A. § 144. The indictment is drawn upon the theory that among the acts proscribed by the statute is that of knowingly transporting within the United States an alien not duly admitted to the United States by an immigration officer, with the knowledge that such alien last entered the United States less than three years prior thereto.[1]

■ At the conclusion of the government's case defendants moved to dismiss the indictment upon the ground that the statute in question is unconstitutional under the test of the "void for vagueness"[2] doctrine. This constitutional attack is based upon the premise that the meaning of this statute is so uncertain as to render the statute void.[3]

■ The due process clause of the Fifth Amendment requires that "criminal statutes * * * give due notice that an act has been made criminal before it is done * * *." Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886. "Every man should be able to know with certainty when he is committing a crime." United States v. Reese, 92 U.S.

214, 220, 23 L.Ed. 563. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of the due process of law. Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322.

■ A statute challenged as repugnant to the due process clause of the Fifth Amendment must be tested "on its face"; because it is "the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888; United States v. Petrillo, 332 U.S. 1, 6–7, 67 S.Ct. 1538, 91 L.Ed. 1877; cf. Dennis v. United States, 341 U.S. 494, 515, 71 S.Ct. 857, 95 L.Ed. 1137, Opinion of Vinson, C. J.

■ Traditionally criminal statutes have been strictly construed in favor of the defendant,[4] but that rule is only one of several factors to be considered as an aid in determining the meaning of penal laws.[5]

---

1. The indictment charges that the defendants named therein did "* * * conspire to commit an offense against the United States of America, and the laws thereof, the offense being to knowingly transport within the United States Pascuala Flores-Flores knowing said Pascuala Flores-Flores to be an alien, not duly admitted to the United States by an Immigration Officer, and knowing that the date of entry of said Pascuala Flores-Flores to the United States was less than three years prior to the date of said transportation, and knowing that said transportation was in furtherance of the violation of the immigration laws of the United States by said Pascuala Flores-Flores."

2. For origin of the "void for vagueness" doctrine, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; for development of doctrine, see Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L. Ed. 774; Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886.

3. The essential purpose of the "void for vagueness" doctrine is to warn individuals of the criminal consequences of

their conduct. Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886; Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; Screws v. United States, 325 U.S. 91, 103–104, 65 S.Ct. 1031, 89 L.Ed. 1495. Criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law. Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886; Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516.

4. See United States v. Wiltberger, 5 Wheat. 76, 95, 18 U.S. 76, 95, 5 L.Ed. 37; United States v. Fruit Growers' Express Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739; McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816; 3 Sutherland on Statutory Construction, p. 49, Sec. 5604. For a discussion of the historical development of the rule, see Hall, Strict or Liberal Construction of Penal Statutes (1935) 48 Harv.L.Rev. 748, 750.

5. See 3 Sutherland on Statutory Construction, p. 56, Sec. 5606.

Another factor equally as important in construing such statutes is the intent which Congress had in enacting the statute. United States v. Corbett, 215 U.S. 233, 30 S.Ct. 81, 54 L.Ed. 173; Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226. Where Congress, in the proper exercise of its powers, has exhibited clearly the purpose to proscribe certain conduct as criminal, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose. United States v. Brown, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442. However, in United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L. Ed. 823, it was pointed out that the presumption of validity is subject to the limitation that the judiciary cannot perform a legislative function in order to bring about the presumed validity. The court said, 333 U.S. at page 486, 68 S.Ct. at page 636:

> "But strong as the presumption of validity may be, there are limits beyond which we cannot go in finding what Congress has not put into so many words or in making certain what it has left undefined or too vague for reasonable assurance of its meaning. In our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions. But given some legislative edict, the margin between the necessary and proper judicial function of construing statutes and that of filling gaps so large that doing so becomes essentially legislative, is necessarily one of degree."

The challenged statute as amended March 20, 1952 reads as follows:

> "Sec. 8. (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

> "(1). brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

> "(2) Knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

> "(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation; or

> "(4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of any alien, including an alien seaman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring."

The particular acts charged in the indictment (transportation of an alien unlawfully in the United States) show an attempt by the government to bring this case within the provisions of paragraph (2) of subsection (a) of Section 8.

The defendants contend that subsection (a) as a whole, and paragraph (2) thereof in particular, is vague, indefinite, uncertain and unintelligible. They point out that paragraphs (1), (2), (3) and (4) are in the disjunctive by reason of the use of the word "or" at the end of paragraph (3),

and that as now punctuated, the language of paragraphs (1), (2) and (3) standing alone are meaningless, and taken collectively or separately define no offense. The government argues that Congress must have intended that each of the first three paragraphs of subsection (a) be read in conjunction with paragraph (4) thereof, and particularly with that portion thereof commencing with the words " * * * any alien, including an alien seaman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States * * *." In fact, the government concedes that only by so reading the statute can paragraph (2) be held to define a crime. Ignoring the problems of punctuation, the government contends that the court should read the statute in the following manner:

· "Sec. 8. (a) Any person * * * who—* * * (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law; * * * (4) * * * any alien, including an alien seaman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony * * *."

This contention must be based on the premise that it was the intention of Congress, by enacting the Amendment to broaden the scope of Section 8(a), to proscribe as criminal the transporting and moving of aliens unlawfully in the United States.[6] This

purpose is indicated by the House Report[7] on this Amendment, which reads:

"Section 1 of this bill is designed to amend section 8 of the Immigration Act of 1917, as amended, in light of the decision of the Supreme Court of the United States in the case of United States v. Evans, 333 U.S. 483 [68 S.Ct. 634, 92 L.Ed. 823] * * *.

"Subsection (a) of this bill is designed to overcome the deficiencies in existing section 8 as illustrated by the Supreme Court decision and will also strengthen the statute generally. The accomplishment of this purpose was the first recommendation made by the President in his aforesaid message (H.Doc. 192, 82nd Cong., 1st sess.).

"Paragraph (1) of subsection (a) of section 1 is substantially the same as existing law found in section 8 of the Immigration Act of 1917 (8 U.S.C. 144). Paragraph (2) of the same subdivision, punishing the transporters of illegally entering aliens would require knowledge that the transported alien was in the United States in violation of law and would also require proof or reasonable grounds for belief that the transported alien had entered the United States within the preceding 3 years."

Though the statute be construed in the sense which best harmonizes with the manifest intent and purpose of Congress,[8] and the evils sought to be overcome be given special attention,[9] and the meaning of the statute be sought from a consideration of it as a whole,[10] the terms thereof must so clearly define what acts are forbidden that men of common intelligence can determine what actions are criminal and what are not. Otherwise the statute is so uncertain as to be unconstitutional. Connally v. General Construction Company, supra.

Assuming, but not deciding, that the court could remedy the obvious errors in

6. For a history of Section 8(a) prior to the 1952 Amendment, see discussion in United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823. .

7. House of Representatives Report No. 1377, Eighty-second Congress, 2nd Session.

8. United States v. Betteridge, D.C.N.D. Ohio, 43 F.Supp. 53, 56.

9. Janof v. Newsom, 60 App.D.C. 291, 53 F.2d 149; 152.

10. Crabb v. Zerbst, 5 Cir., 99 F.2d 562, 564.

punctuation which are patent upon the face of the statute, so that the section would read as proposed by the government, the sense of paragraph (2) still could not be reduced to one certain meaning. The phrase, "knowing that *he* is in the United States in violation of law, and knowing or having reasonable grounds to believe that *his* last entry into the United States occurred less than three years prior thereto," (emphasis added) is not clear as to which word is the antecedent of the words "he" and "his." This portion of the statute is susceptible of two radically different interpretations, depending upon the determination of whether these words refer to "any person" or "any alien." The sequence of the words used in the statute indicate that "he" and "his" refer to "any person" and not to "any alien." Such an interpretation would require as a necessary element of the crime, which paragraph (2) purports to define, that the transporter as well as the alien transported be unlawfully in the United States. The legislative history of the Amendment which added the words of paragraph (2) to the statute fails to indicate that Congress intended to so narrowly define the crime. However, there is nothing therein which clearly rules out the possibility that such an intention may have existed. This possibility of interpretation is further fortified by the language of paragraph (1), which reads:

"(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, *by himself* or through another, to bring into or land in the United States, by any means of transportation or otherwise;" (emphasis added.)

The words "by himself" obviously refer to the transporter ("any person") and not to the person transported ("any alien").

The factual situation in this case aptly illustrates the incongruous result which could occur as a result of the application of the statute as it is now written. The defendants fall into three groups, namely, those who are aliens and admittedly in this country in violation of law; those who are aliens and who claim to be lawfully in this country; and one who claims to be a citizen of this country. It is therefore possible that the statute would make criminal the acts of the defendants unlawfully in this country and at the same time not apply to the other defendants, even though all of them had performed the same acts with the same intention.

The other phrase in paragraph (2) which presents doubts as to its meaning is "in furtherance of such violations of law." The problem is again one of reference. Which violation of law is meant—that of the transported ("any alien") or of the transporter ("any person")?

These phrases present patent ambiguities. Ambiguities are not to be resolved so as to embrace offenses not clearly within the law. Krichman v. United States, 256 U.S. 363, 367, 41 S.Ct. 514, 65 L.Ed. 992. The words of a criminal statute must be such as to leave no reasonable doubt as to the intention of the legislature, and where such doubt exists the liberty of the defendant is favored. United States v. Corbett, 215 U.S. 233, 30 S.Ct. 81, 54 L.Ed. 173.

This court is mindful that the amendment to the statute here considered was prompted in part to remedy defects pointed out by the judiciary.[11] The provisions of paragraph (2), however, are new to the statute and were not adopted to cure the disclosed defect. Consequently, it is not now decided that any of the numbered paragraphs of subsection (a), other than paragraph (2), are so uncertain as to be void.

But, paragraph (2), whether read alone, or in conjunction with paragraph (4), lacks sufficient certainty to meet the requirements of due process of the fifth Amendment. It is not for the courts to resolve this uncertainty. It is better for Congress, and more in accord with its function, to revise the statute than for the courts to guess at the revision it would make. United States v. Evans, supra.

For the reasons stated, defendants' motion to dismiss should be and the same is hereby granted.

11. Statute held not to include offense of harboring or concealing an alien. United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823.