**Henry TAYLOR, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18301.**

United States Court of Appeals Ninth Circuit.

June 21, 1963.

Gill, Doi, Shim, Maito & McClung, and David C. McClung, Honolulu, Hawaii, for appellant.

Herman T. F. Lum, U. S. Atty., and T. S. Goo, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Henry Taylor was tried under a twenty-three-count amended information charging violations of section 501(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501(c). The labor organization in question is the American Guild of Variety Artists (Guild). During the indicated period Taylor was manager of the Hawaiian branch of that organization.[1]

The jury returned a verdict of guilty on each of the counts except the third. A judgment of conviction and sentences were thereupon entered, from which Taylor appeals.

Section 501(c) makes it a crime for an officer or employee of a labor organization to embezzle, steal or unlawfully and wilfully abstract or convert to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of such organization. The section provides that one who violates that statute shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Taylor contends that because the heavy penalty provision of this statute is applicable to all violations thereof without regard to the amount embezzled, stolen, abstracted or converted, the statute violates the Due Process Clause of the Fifth Amendment.[2] Appellant calls attention to other criminal statutes, dealing with embezzlement, stealing and purloining of money or other property, in which a lesser penalty is prescribed where the money or the value of the property is less than $100.[3] Appellant argues that

1. The amended information originally contained twenty-four counts, but the twenty-fourth count was stricken before the case went to the jury.

2. Appellant first raised this question prior to trial on a motion to dismiss the information. The motion was denied.

3. The statutes upon which appellant relies are 18 U.S.C. §§ 641, 646, 648–650, 652–657, 659, 1691 and 1711. Title 18 U.S.C. § 641, dealing with similar offenses involving money and property of the United States prescribes, as the penalty for violations, a fine of not more than $10,000 or imprisonment for not more than ten years, or both; "but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

A like reduction in penalty, where the money or value of property is not more than $100, is provided for in section 646 (embezzlement by officers of a United States court of money belonging in the registry of the court); section 648 (embezzlements, etc. of public moneys, by

this difference in penalty provisions works an impermissible discrimination against persons employed by labor organizations when compared with the treatment handed out to embezzlers and the like employed by other than a labor organization falling within the purview of the statute.

■■ In support of this proposition appellant relies primarily on Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655, in which Oklahoma's Habitual Criminal Sterilization Act was held to offend the equal protection clause of the Fourteenth Amendment.[4] The Fourteenth Amendment applies to state, not federal action. The Fifth Amendment, here invoked, applies to federal action, and while it contains a due process clause, it does not contain an equal protection clause. Detroit Bank v. United States, 317 U.S. 329, 337, 63 S.Ct. 297, 87 L.Ed. 304.

■■ However, although due process and equal protection are not always interchangeable phrases, discriminatory federal action may be so unjustifiable as to be violative of Fifth Amendment due process. The test, insofar as federal action is concerned, is whether the alleged discriminatory feature is reasonably related to any proper governmental objective. See Bolling v. Sharpe, 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884; Boylan v. United States, 9 Cir., 310 F.2d 493, 500.

But having posed the precise constitutional question which appellant seeks to present, we must hold, on our own motion, that it is not a question which may be determined on this appeal.

■ Constitutional questions are not entertained in federal court in advance of the strictest necessity.[5] Under this principle a constitutional attack upon a statute will not be entertained at

statutory custodians); section 649 (embezzlements of public funds by persons required to deposit them); section 650 (embezzlement of deposited funds by Treasurer of the United States or any public depository); sections 652 and 653 (embezzlement of public moneys by federal disbursing officers); section 654 (embezzlement or conversion by employees of the United States of money or property of another coming into their official possession); sections 655 and 656 (theft by bank examiners, officers, employees, receivers or agents, from banks which are members of the Federal Reserve System or which are insured by the Federal Deposit Insurance Corporation); section 657 (embezzlement, etc. by officers, agents, and employees of Reconstruction Finance Corporation and other named federal corporations); section 659 (embezzlement, theft, etc. from common carrier facilities); section 1691 (embezzlement, etc. of postal savings funds); and section 1711 (misappropriation of postal funds by postal service employees).

Not cited by appellant is 18 U.S.C. § 660, providing that an officer or employee of a common carrier who embezzles, steals, abstracts or wilfully misapplies or permits to be misapplied any moneys, funds, credits, securities, properties or assets of such carrier, or wilfully or knowingly converts the same to his own use or to the use of another, shall be fined not more than $5,000 or imprisoned not more than ten years, or both. No lesser penalty is provided in section 660 where the property stolen, embezzled or converted is of a value of not more than $100 or any other specified maximum amount.

4. The Equal Protection Clause of the Fourteenth Amendment was also involved in two other cases relied upon by appellant, namely: Davis v. Ogden City, 117 Utah 315, 215 P.2d 616, 223 P.2d 412, 16 A.L.R.2d 1208; and Ratcliff v. State, 106 Tex.C.Cr. 37, 289 S.W. 1072. The fourth case relied upon by appellant, United States v. DeCadena, D.C.N.D. Cal., 105 F.Supp. 202, involved another aspect of the Due Process Clause of the Fifth Amendment, namely, whether the criminal statute there in question (now repealed) was so vague that it failed to give due notice that an act had been made criminal.

5. Rescue Army v. Municipal Court, 331 U.S. 549, 568, 67 S.Ct. 1409, 91 L.Ed. 1666; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring); Carson v. United States, 9 Cir., 310 F.2d 558, 561.

the instance of one who fails to show that he is injured by the statute's operation. Rescue Army v. Municipal Court, 331 U.S. 549, 569, 67 S.Ct. 1409, 91 L.Ed. 1666.

■ Appellant has failed to show that he is injured by the failure of section 501(c) to contain a provision prescribing a lesser penalty where the amount involved is not more than one hundred dollars. On the first count Taylor was sentenced to prison for a term of three years, no fine being imposed. Since the amount of money involved in that count was $138, a provision in the statute under which he was convicted (section 501(c)), setting a lesser penalty where not more than one hundred dollars is involved, would have been of no benefit to him on that count. This is also true of his like sentences under counts II, XI and XII, where the amounts involved were, respectively, $186, $279 and $279. The sentences under counts II, XI and XII run concurrently with each other and with the sentence under count I.

The amount involved in each of the remaining counts under which convictions were obtained was less than one hundred dollars. As to each the same three-year sentence, without fine, was imposed, these sentences to run concurrently with each other and with the sentence imposed under count I.

Assuming, therefore, that a lesser sentence should have been available to appellant on each of the latter counts in order to comport with Fifth Amendment due process, he has nevertheless not been prejudiced. He must in any event serve the concurrent three-year sentences imposed under counts I, II, XI and XII. The like sentences on the remaining counts, being the same and likewise concurrent, have added nothing to appellant's penalty. This, of course, assumes that some one of the convictions obtained under counts I, II, XI and XII is otherwise valid. For the reasons stated later in this opinion we hold that the convictions under at least counts I, II and XI are otherwise valid.

■ Appellant argues, however, that where a statute is challenged as denying due process of law, it must be tested on its face without regard to the circumstances of a particular case. In so arguing, appellant relies on United States v. DeCadena, D.C.N.D.Cal., 105 F.Supp. 202, 204.[6]

This is ordinarily the case where, as in DeCadena, the constitutional question is whether the statute is void for vagueness, for then the problem is whether the statute itself gives notice. See Jordan v. DeGeorge, 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886.[7]

But no such consideration is involved where the constitutional challenge is predicated upon an asserted discriminatory feature in the penalty part of the statute unless such feature is of a kind which could prejudice all who are sentenced under the act. As indicated above, that is not the case here. Many statutes may be constitutional as applied under one set of circumstances and unconstitutional as applied under another; the question in such a case is whether the statute is constitutional as applied.[8]

If a statute carries a discriminatory penalty provision but, under the circumstances of a particular case, it is clearly demonstrable that a defendant has not been prejudiced, the statute is not uncon-

---

6. In DeCadena, the court stated:
 "A statute challenged as repugnant to the due process clause of the Fifth Amendment must be tested 'on its face'; because it is 'the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression.' "

7. Even in void for vagueness cases, however, the courts have not always limited themselves to an examination of the face of the statute, but have sometimes taken into consideration other circumstances. See Dennis v. United States, 341 U.S. 494, 515–516, 71 S.Ct. 857, 95 L.Ed. 1137.

8. Compare Dennis v. United States, 341 U.S. 494, 514, 71 S.Ct. 857, 95 L.Ed. 1137 with United States v. Petrillo, 332 U.S. 1, 6, 67 S.Ct. 1538, 91 L.Ed. 1877.

stitutional as applied to him. This being the position in which appellant finds himself, it is of no concern to him whether section 501(c) carries a discriminatory penalty. Therefore we do not decide the constitutional question.

■ Appellant next argues that the verdict is not supported by substantial evidence.

The twenty-two counts under which Taylor was convicted cumulatively charge that on various dates between June 20, 1960 and June 26, 1961, while he was an employee of the Guild, a labor organization, he embezzled, stole or unlawfully and wilfully abstracted or converted to his own use moneys of the Guild in amounts ranging from $25 to $279.

The proof consisted of oral testimony, exhibits and stipulations as to certain facts. Under this proof the jury could have found that Taylor was appointed Hawaiian branch manager of the Guild on May 20, 1960; that upon his appointment he was told that all moneys collected by him for the Guild on any given day should be deposited by the close of the next business day in the Guild account at the Bishop National Bank in Honolulu; that he was specifically instructed not to cash any such checks; that according to further instructions, he was to maintain certain books and records for the Guild in connection with the receipt of initiation fees and dues from present or prospective members.

There was also sufficient evidence to warrant a jury finding that between June 20, 1960 and June 26, 1961, Taylor received checks made out to the Guild in varying amounts ranging from $25 to $279, each identified in a separate count as amplified by a bill of particulars; [9] that these checks were made and delivered in payment of initiation fees and dues by present and prospective mem-

bers of the Guild; that Taylor, contrary to his instructions, failed to deposit the checks to the account of the Guild but endorsed them and received cash therefor; that he withheld the amounts of cash specified in each count on which he was convicted; and that Taylor did not record, in any of the books and records of the Guild, the receipts so withheld. With specific reference to counts I, II and XI, each involving more than one hundred dollars, the evidence was sufficient to establish the facts stated above.[10]

■ Appellant argues further, however, that these facts are not sufficient to convict. It is his position that there must also be as to each count, but was not, direct evidence showing that: (1) Taylor's dealings with the money constituted an abstraction or conversion or embezzlement of the money to his own use or the use of another; and (2) the abstraction, conversion or embezzlement was done unlawfully and wilfully with intent to deprive the Guild of the money. Direct evidence in proof of these elements is always required, appellant argues, but especially so in view of Taylor's testimony demonstrating his innocent intent.

It was Taylor's testimony that he cashed the checks instead of depositing them so that it would be easier to make an adjustment in the event the check "bounced," or in the event the fee was paid for the initiation of a foreign entertainer, and the applicant did not come to the Islands. He stated that he did not keep Guild records on these transactions because they had to be held in suspense pending information as to the real name of the performer, or to ascertain if the remainder of the fee would be paid. Taylor testified that he made informal memorandum slips of each transaction which were kept in the Guild office,

9. The payment of $75 on May 10, 1961 was in the form of cash instead of a check.

10. The jury could also have found that in some cases Taylor made differing records, giving the members or applicants a re-

ceipt for one amount, while accounting to the Guild for a lesser amount which served to conceal the amount withheld. The jury could have inferred from this an intent to steal or embezzle the funds not deposited to the credit of the Guild.

but that they were not returned to him when he was discharged.

Taylor testified that he took all the cash proceeds to the Guild office awaiting information that would make it possible to allocate the funds to the various accounts. When he went on vacation in July, 1961, Taylor testified, he took the money out of the Guild office and left it at his home. It was his testimony that after his discharge he several times offered to make a full accounting but that this was refused. He turned over most of the moneys so held. He still had about one thousand dollars at the time of trial which, according to Taylor, he offered to turn over to the Guild, but the offer was refused.

In arguing this point appellant cites State v. McGuire, 107 Mont. 341, 88 P.2d 35, where it was held that proof of a shortage is not sufficient to convict where the defendant gave an explanation which was consistent with his innocence, namely that he was robbed. This explanation was partially corroborated by witnesses for the defendant and state and was not contradicted by any witness. The essence of the decision was that "uncontradicted, credible evidence cannot be disregarded by court or jury."

That is not the rule in this circuit. A jury is not bound to accept the testimony of any witness in a criminal trial.[11]

It was of course necessary for the Government to prove beyond a reasonable doubt that Taylor intended to, and did, embezzle, steal or unlawfully and wilfully abstract or convert to his own use the moneys of the Guild which he failed to deposit to its account.[12] See Morissette v. United States, 342 U.S. 246, 260, 72 S.Ct. 240, 96 L.Ed. 288. But the general rule is that unlawful and wilful purpose to retain the money of another for one's own use, need not be proved by direct testimony. As pointed out in McKenna v. United States, 8 Cir., 232 F.2d 431, 437, such a state of mind is not generally susceptible of direct proof but may be inferred from the facts and circumstances attending the act.

But appellant argues that no such inference may be drawn in this case because it was not proved that a demand was made for an accounting and that the appellant failed or refused to account. He asserts that, quite to the contrary, appellant requested that he be allowed to account and that this request was denied. In support of this argument appellant calls attention to an instruction given here which became the law of the case,[13] and to instructions which were requested and refused in State v. Stringer, 162 La. 925, 111 So. 330.

In Stringer the defendant collected twenty-five dollars belonging to his employer on July 4, 1926 and took the money with him that evening when he departed for another city fifty-two miles away. He returned to his home city fifteen days later and was immediately arrested and charged with embezzlement. His defense was that on the day he re-

---

11. See Wilson v. United States, 9 Cir., 250 F.2d 312, 318; Lutfy v. United States, 9 Cir., 230 F.2d 643, 646. The same rule applies in this circuit in civil actions and suits in admiralty. See Ramos v. Matson Navigation Company, 9 Cir., 316 F.2d 128, 132, and cases there cited.

12. It was so charged in each count of the amended information.

13. The instruction is question reads:
"Now, if there is proof beyond a reasonable doubt of actual taking, misappropriation or embezzlement by the Defendant, then no demand for an accounting is necessary. On the other hand, if such proof is lacking, then a demand for an accounting is necessary, even though Defendant might be in possession of money of the Variety Artists,—and since in this case there is no evidence of such a demand—why, you could not find the Defendant guilty under that theory. In other words, the government's theory here is that there was at the time an unlawful taking, misappropriation and embezzlement by the Defendant when he acted in the manner in which he acted, as the government claims, under each Count. * * *"

ceived the money he tried to find his employer to pay over the money but could not find him; so he took the money with him on the trip.

Under the circumstances of that case the court held that the defendant was entitled to a requested instruction to the effect that a mere failure to account for money received for an employer, without proof of a demand for an accounting, would not sustain a conviction "unless it was proven that the defendant actually misappropriated the money or converted it to his own use."

Such an instruction, in essence, was given in this case, as quoted in note 13. But appellant argues that there was no other evidence of misappropriation and conversion; therefore a demand for an accounting, and a refusal, was necessary to support the verdict. Appellant's mistake is in assuming that because there was no other direct evidence of unlawful intent to misappropriate the retained funds, there was no other evidence thereof. As already noted, direct evidence is not required. Here the jury were entitled to believe that appellant was under explicit instructions to deposit all checks given in payment of initiation fees and dues as received, to the Guild's account, and to cash no such checks; that he did not deposit the checks here in question, but cashed them and accepted the proceeds; that these proceeds were in his possession at his home at the time the shortages were discovered; and that he had submitted false records to the Guild headquarters.

 Whether it is necessary for the prosecution to prove a demand for an accounting, and a refusal to account, in order to make out a case of embezzlement depends upon the facts of the case. Where it appears that the time for payment of the money is definitely fixed, and the payment was not made within that time, no such demand and refusal need be shown.[14] Here the jury could find that the time for payment was definitely fixed—the checks were to be deposited upon receipt to the Guild's account; and appellant did not make such payments within that time or at all prior to discovery of the shortages.[15] As before indicated, the jury were not required to believe Taylor's explanation for his failure to deposit the checks or the proceeds thereof.

 Appellant's final assignments of error bring into question the trial court's refusal to give certain requested instructions. One of these emphasized the principle that in order to constitute a violation of section 501(c), it must be shown that an abstraction, conversion or appropriation was done "willfully and unlawfully and with a fraudulent intent." Another would have advised the jury that, "there is no presumption of abstraction, conversion or misappropriation raised from a mere withholding or mere failure to pay, return, deposit or account for

14. Dobbins v. United States, 81 U.S.App. D.C. 218, 157 F.2d 257, 259; People v. Hall, D.C.A., 55 Cal.App.2d 343, 130 P. 2d 733, 736.

15. What has just been said also serves to distinguish another decision relied upon by appellant on this branch of the case, namely People v. Grimes, D.C.A., 91 Cal. App.2d 629, 205 P.2d 416. In Grimes the action of a trial court in setting aside, after a preliminary hearing, an information charging grand theft, was upheld. The evidence produced at this hearing showed only that the defendant was the executor of an estate; that as such executor he received three hundred dollars which belonged to the estate; that this sum was not deposited by the defendant in a certain bank account; and that one of the legatees inquired of the defendant as to when the estate would be distributed. The court said:

"* * * An inference that the money was stolen or embezzled cannot be drawn from the fact that respondent did not deposit the money in a particular bank since the Probate Code does not impose upon an executor the duty of depositing funds which come into his possession during the course of administration * * *."

In the case before us, appellant did have a duty to deposit Guild checks in that organization's bank account—a duty which he failed to perform.

any of the moneys collected by the Defendant."

The jury were instructed that "the term 'embezzlement' as used in the statute means the unlawful and willful taking or conversion by a person to his own use of funds or monies which came into his custody or possession lawfully by virtue of his office or employment." Developing this definition, the court told the jury that an essential element to the commission of the offense charged in each count "is the fraudulent, unlawful and willful taking or conversion of money, fund or property belonging to another." The court then defined the terms "fraudulent," "unlawful" and "willful," and appellant does not question the correctness of those definitions.

Further emphasizing these essential elements of the offense, the court told the jury that if they were satisfied beyond a reasonable doubt that, with respect to any particular count, appellant wilfully or fraudulently embezzled, converted or appropriated the money "with a bad purpose," then they could find him guilty on that count, assuming that the other essential elements of the crime were found to be present. On the other hand, the court advised, they should not convict if they found that appellant's action or lack of action was due to "inadvertence, carelessness or negligence, or even gross negligence on his part, * * *" There were also other instructions, explicit and in great detail, further emphasizing the necessity of finding that the elements of fraud, unlawfulness and wilfulness must be present.

Our examination of all of the instructions convinces us that the jury was amply charged with regard to the matters dealt with in the proposed instructions referred to above. The refusal to give the requested instructions was not reversible error.

A third requested instruction, refused by the court, was to the effect that the jury should not convict "upon mere suspicion," and that what the law requires "is not suspicion, not possibilities, nor mere probabilities, but proof which excludes all reasonable doubt of his guilt."

The jury was fully instructed concerning the necessity of finding the facts against appellant beyond a reasonable doubt in order to convict. The trial court did not err in refusing to give this further instruction on the point.

The judgment is affirmed.