The OKLAHOMA PUBLISHING COMPANY, a Delaware Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. Civ. 80–479–BT.

United States District Court, W. D. Oklahoma.

June 5, 1981.

David Machanic, Michael Minnis, Bob Lake Grove, Oklahoma City, Okl., for plaintiff.

F. James Foley, Elizabeth Gere Whitaker, U. S. Dept. of Justice, Washington, D. C., Larry Patton, U. S. Atty., Stan Twardy, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## ORDER

BRETT, District Judge.

This matter comes before the Court on plaintiff's Alternative Motions for Summary Judgment and defendant's Cross Motion for Summary Judgment. Plaintiff's initial motion seeks a declaratory judgment that 18 U.S.C.A. § 5038(d) is unconstitutional. Plaintiff's Alternative Motion seeks a declaratory judgment that the restrictions contained in 18 U.S.C.A. § 5038(d) do not apply to members of the press, and more specifically to employees of plaintiff publishing company. Defendant's Cross Motion for Summary Judgment requests the Court dismiss the action. For the reasons set out below, plaintiff's Alternative Motion for Summary Judgment is hereby sustained.

## FACTS

The essential facts in this matter are not in dispute. In 1978, a 16-year old juvenile was charged with first degree murder in Kay County District Court, Newkirk, Oklahoma. A great deal of publicity surrounded the case and the name of the juvenile appeared in the media numerous times. In 1979, however, the Oklahoma Court of Criminal Appeals ruled that the State of Oklahoma did not have jurisdiction to prosecute the case since the alleged crime took place in "Indian Country." Consequently, on May 1, 1979, the state charges against the youth were dismissed. Ultimately, the United States Supreme Court upheld the Court of Criminal Appeals ruling that the state did not have jurisdiction to prosecute the case.

In December of 1979 the United States initiated prosecution of the juvenile pursuant to the Federal juvenile delinquency statutes. *See United States v. C.M.G.*, No. CR–79–124 (W.D.Okla.). On April 8, 1980, a hearing was held in regard to the case. Among those attending the proceedings was James Johnson, a reporter and employ-

ee of plaintiff publishing company. The affidavit of Mr. Johnson describes the ensuing events as follows:

" ... I was told by a U.S. Marshal that the Trial Judge wanted to speak with me.

(4) The Trial Judge advised me:

(a) of the existence of § 5038(d)(2)[1] of Title 18 of the U.S. Code, and

(b) of the possibility that violation of this statute should be punished by contempt.

(5) Throughout the trial of *U. S. v. C.M.G.*, No. CR–79–124–D, U.S. Marshals were stationed in the courtroom where they advised members of the news media of the existence of Title 18 U.S.C.A. § 5038 . . ."

Immediately subsequent to the admonition of the Court, reporter James Johnson filed an Application to Quash Oral Gag Order. On April 9, 1980, the Court denied the application stating as follows:

"The Application is not correct in alleging that the Court imposed an oral gag order on James Johnson or any other representative of the news media in connection with the juvenile case being tried by the Court.

"The Court merely pointed out to new [sic] media representatives the provisions of a law enacted by the United States Congress and codified as Title 18, United States Code, § 5038(d)(2) and referred them to the legislative history of said provision in which mention was made that a violation of the same could be punished by contempt of court proceedings. This was done as a courtesy to such personnel to insure that they were fully aware of the state of the Federal law in this regard as enacted by the national Congress.

"Hence, as the Court imposed no oral gag order as alleged, but merely pointed out the existing law, the Application should be denied."

As a result of the Court directing the attention of the reporters to 18 U.S.C.A. § 5038(d), and in view of the text of the statute, plaintiff did not publish the name or picture of the juvenile in question. Plaintiff now brings this separate action to declare that 18 U.S.C.A. § 5038(d) is unconstitutional or in the alternative that the provisions of the statute apply "only to court personnel and, thus, [are] not applicable in any fashion to plaintiff." Therefore, the present issue is substantially different from the question previously before the Court in the context of plaintiff's Application to Quash. Defendant concedes that 18 U.S.C.A. § 5038(d) does not apply to plaintiff but nonetheless opposes declaratory relief arguing that since the statute does not apply to plaintiff, plaintiff is not in danger of prosecution and therefore the cause is not ripe for adjudication.

## DISCUSSION OF AUTHORITY

"As is well known, the Federal Courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues presented in actual cases not abstractions' are requisite. This is true of declaratory judgments as any other field." *United Public Workers of America v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the declaratory judgment act is necessarily one of degree and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, showing that there is a substantial controversy, between

1. In applicable part 18 U.S.C.A. § 5038(d) provides as follows:

"(d) Unless a juvenile who is taken into custody is prosecuted as an adult—

(1) neither the fingerprints nor a photograph shall be taken without the written consent of the judge; and

(2) *neither the name nor picture of any juvenile shall be made public by any medium of public information in connection with a juvenile delinquency proceeding.*" (Emphasis added)

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 820 (1941). *See* also *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ An action for a declaratory judgment may come too soon for adjudication because a dispute has not ripened into an actual controversy. *See e. g.* 10 *Wright & Miller,* § 2757 at 764. As a prudential doctrine, ripeness is in part an expression of the Court's inherent discretion when declaratory or injunctive relief is sought. *Martin Tractor Company v. Federal Election Commission,* 627 F.2d 375, 379 (D.C.Cir.1980). Therefore, the issue before the Court is whether the construction of 18 U.S.C.A. § 5038(d) is a question sufficiently ripe as to be a controversy for purposes of declaratory relief.

■ A controversy exists if the contentions of the parties are definite and concrete, not hypothetical or abstract. *Railway Mail Assn. v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). But "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).

■ When contesting the constitutionality of a statute which contains criminal sanctions "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). *See* also *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct.

266, 21 L.Ed.2d 228 (1968); *Evers v. Dwyer,* 358 U.S. 202, 204, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958). When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by statute and there exists a credible threat of prosecution thereunder he "should not be required to await and undergo a criminal prosecution as a sole means of seeking relief." *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973).

Furthermore, where the plaintiff complains of chills and threats in a protected First Amendment area a court is more disposed to find that a controversy is real and not abstract. *Reed Enterprises v. Corcoran,* 354 F.2d 519 (D.C.Cir.1965). As the court stated in *National Student Association v. Hershey,* 412 F.2d 1103, 1115 (D.C.Cir.1969):

"In determining whether a given chilling effect is sufficient it would seem relevant to consider *inter alia*: (1) the severity and scope of the alleged chilling effect on First Amendment freedoms, (2) the likelihood of other opportunities to vindicate such First Amendment rights as may be infringed with reasonable promptness, and (3) the nature of the issues which a full adjudication on the merits must resolve, and the need for factual referents in order properly to define and narrow the issues ..."

■ In applying these general concerns to the present case, the Court concludes that there is a controversy sufficient to permit a declaratory judgment in this matter. First, the chill here threatens the right of a newspaper to report events that take place in the public forum of the courtroom. Clearly, this is an area of recognized protection under the First Amendment. *See e. g. Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). In fact, the United States does not contest the right of plaintiff to print the name and photograph of a juvenile who is the subject of federal delinquency proceedings.

Second, in the present case, a reporter was confronted with possible contempt sanctions for constitutionally protected ac-

tivity. Admittedly, a number of opportunities may arise in the future to vindicate the First Amendment rights at bar. Examples include a repeat of the events here; a specific threat of criminal contempt by the Court against a news reporter; or, an actual criminal contempt citation for publication by a member of the news media. However, the Court concludes that such additional developments are not a necessary predicate for declaratory relief. *Compare Steffel v. Thompson, supra.*

Finally, the nature of the issues to be resolved here are not complicated. In fact there is no dispute as to the proper statutory construction of 18 U.S.C.A. § 5038(d). In brief, the Government states:

"Plaintiff has apparently been acting on the belief that this subsection reaches and restricts conduct of the press. In fact, the challenged law, as correctly interpreted, does not apply to the press but only to court personnel and those properly under the supervision of the court." (Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment, p. 2).

In view of the above, the Court concludes that the chilling effect on the First Amendment is such that a controversy is present here and declaratory relief is appropriate.

■ Plaintiff's original Motion for Summary Judgment seeks a declaratory judgment that 18 U.S.C.A. § 5038(d) is unconstitutional. However, it is settled law that constitutional questions are not to be entertained in federal courts in the absence of the strictest necessity. *Taylor v. United States,* 320 F.2d 843 (9th Cir. 1963) *cert. denied* 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964). Furthermore, once the narrow issue of constitutionality has been reached, the Court is guided by a presumption of constitutionality that attaches to all statutes. *See e. g. United States v. Kiffer,* 477 F.2d 349 (2nd Cir. 1973) *cert. denied* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65. In a matter of statutory construction, the Court should favor an interpretation which supports constitutionality. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

■ The Court concludes that there is an interpretation of 18 U.S.C.A. § 5038(d) that comports with constitutional standards. Therefore, plaintiff's initial Motion for Summary Judgment cannot be sustained.

■ Plaintiff's Alternative Motion for Summary Judgment seeks a declaratory judgment that 18 U.S.C.A. § 5038(d) does not apply to members of the press. The Government does not dispute this construction of the statute, but opposes declaratory relief on the grounds that the issue is not presently ripe for a determination by the Court.

The Government position in this matter ignores both the ambiguous language of the statute and the exchange between the trial court and plaintiff's news reporter. It may be true that the plaintiff does not face an immediate threat of prosecution. However, it is equally clear that without a resolution of this issue, other members of the media in the future may be faced with a similar threat of infringement upon their First Amendment rights. If the statute concededly does not apply to members of the news media, no harm can result from a judicial declaration consistent with this position. A judgment to this effect will remove a chill on the First Amendment. By contrast, a judgment in accordance with the position of the Government will prolong the confusion in regard to this statute for no apparent reason.

The Court concludes that there is a controversy in the present case and consequently this matter is ripe for declaratory relief. The Court further concludes that as a matter of law 18 U.S.C.A. § 5038(d) does not apply to members of the news media in the private sector and more specifically to plaintiff publishing company and its employees. Therefore, plaintiff's Alternative Motion for Summary Judgment is hereby sustained.

IT IS SO ORDERED.